**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GEORGE ROBERT HUFF; MARIA
HUFF; and VINCENT HUFF,
*Plaintiffs-Appellants,*

v.

CITY OF BURBANK; DARIN RYBURN;
EDMUNDO ZEPEDA; CHRIS ROBERTS;
and FERNANDO MUNOZ,
*Defendants-Appellees.*

No. 09-55239

D.C. No.
2:07-cv-04114-
FMC-AJW

OPINION

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, United States District Judge,
Presiding

Argued and Submitted
June 8, 2010—Pasadena, California

Filed January 11, 2011

Before: Alex Kozinski, Chief Circuit Judge,
Johnnie B. Rawlinson, Circuit Judge, and
Algenon L. Marbley, United States District Judge.*

Opinion by Judge Marbley;
Partial Concurrence and Partial Dissent by Judge Rawlinson

---

*The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

615

.

## COUNSEL

Leo James Terrell (argued) and Erikson M. Davis, Law Offices of Leo James Terrell, Beverly Hills, California, for the plaintiffs-appellants.

Calvin House (argued), Gutierrez, Preciado & House, LLP, Pasadena, California, for the defendants-appellees.

**OPINION**

MARBLEY, District Judge:

Plaintiffs George, Maria, and Vincent Huff appeal the district court's judgment in favor of four officers who entered their home without a warrant. For the reasons below, we find that only two of the four officers were entitled to qualified immunity.

## I.  BACKGROUND

On June 1, 2007, the four officers responded to a call from Bellarmine-Jefferson High School. At Bellarmine, they learned of a rumor about a letter that said that Vincent, a student there, was going to "shoot up" the school. The principal, Sister Milner, told Sergeant Ryburn and Officer Zepeda that Vincent had not been at school in two days, that she was concerned about the threat and the safety of her students, that some parents had kept their students home, and that she wanted the police to investigate. After conducting interviews with Sister Milner and two students, the officers could not confirm the existence of any threatening letter.

The officers decided to go to the home of George; Maria, his wife; and Vincent, their son, to interview the family and continue their investigation. Before leaving Bellarmine, the officers asked Sister Milner to make sure that no one contacted the Huffs to inform them that the Burbank Police were on the way to their home. When the officers arrived in the vicinity of the Huff home, they parked their cars away from the residence so that the Huffs would not see them approaching.

Upon arrival at the Huff residence, Zepeda knocked on the door and announced that the officers were with the Burbank Police Department. When no one responded, Ryburn called the home telephone number, and though the officers could

hear the telephone ringing inside the house, no one answered. Ryburn then called Maria on her cell phone, which she answered. Ryburn identified himself and indicated he wanted to talk to Maria about her son Vincent. Maria then hung up the phone.

Two minutes later Maria and Vincent came out of the house and stood on the front steps in front of Ryburn and Zepeda. Zepeda told Vincent that the Officer Defendants were there to talk about some threats at the school, to which Vincent replied "I can't believe you're here for that." (ER 78:22-23.) The officers concede that when they encountered Vincent outside of the Huff residence, they did not have probable cause to enter the home.[3] (1 RT 44:3-9.) Ryburn approached Maria and asked if they could go inside the house to talk. She said, "No," because the Officer Defendants did not have a warrant. (ER 78:24-25; 2 RT 44:1-8, 96:18-97:8.) Ryburn then asked Maria if there were any guns in the home. Maria testified that she responded that she would go get her husband. Maria then turned around and went into the house.

---

[3]Officer Roberts testified explicitly at the hearing that when he followed Sergeant Ryburn into the house, he did not believe that they had probable cause. He testified as follows:

> Q:  And you were going inside the Huff residence, you never, ever saw any criminal conduct; isn't that true?
>
> A   Correct.
>
> Q:  You never saw anything that gave you probable cause that any of your fellow officers were about to be injured or in danger of their lives; isn't that true?
>
> A:  Correct.

(1 RT 44:3-9.) Sergeant Ryburn testified that when he left Bell-Jeff for the Huff residence, he had "reasonable suspicion to detain Vincent Huff." (2 RT 9:18-21.) Reasonable suspicion does not rise to the level of probable cause. *See Alabama v. White*, 496 U. S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause . . ."). Finally, at oral argument, defense counsel conceded that the Officer Defendants did not have probable cause when they arrived at the Huff residence or when Mrs. Huff entered her residence.

Ryburn followed Maria into the house. Ryburn acknowledges that, at this point, Maria was not detained or arrested, and that she was free to leave from where she had been standing and speaking with Ryburn and Zepeda. Vincent then entered the residence, followed by Zepeda. Zepeda entered the home because of "officer safety" concerns. (ER 79:3-4.) Since the officers were there to investigate threats to shoot, he did not want Ryburn to enter the house alone. The other two officers, Munoz and Roberts, had been standing near the sidewalk, unable to hear any of the conversation between Maria, Vincent, Ryburn, and Zepeda. After Ryburn and Zepeda entered the Huff residence, Munoz and Roberts assumed that Maria and Vincent had given consent and entered the home.

After entering the Huff residence, the officers remained in the living room. George entered the room and challenged the authority of the police to be in his home. The officers remained inside the Huff home for five to ten minutes, talking with the Huff family. The officers satisfied themselves that the rumors about the threats at Bellarmine were untrue. They then left the Huff residence and returned to the school to report their conclusions. At no time while the officers were in the Huff home did they conduct any search of George, Maria, Vincent, or any property.

After the officers returned to Bellarmine, Ryburn suggested to Sister Milner that she send out a notice to the parents of Bellarmine's students informing them that there was no such threat or letter. As a result of speaking with Ryburn about the morning's events, Sister Milner sent a letter to parents, which explained that there was no truth to the rumor about a student threatening to shoot anyone.

The Huffs initiated this action, which sought compensatory and punitive damages, alleging that their constitutional rights had been violated when the police entered their home. After holding a two-day bench trial, the district court held that exigent circumstances permitted the police's warrantless entry

into the Huff residence and that the officers were entitled to qualified immunity. The Huffs appeal.

## II. LAW AND ANALYSIS

### A. Findings of Fact

The Federal Rules of Civil Procedure require that the district court make findings of fact and conclusions of law in all cases tried without a jury. Fed. R. Civ. P. 52(a). The factual findings must be sufficient to indicate the factual basis of the district court's ultimate conclusions. *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 422 (1943); *Vance v. Am. Haw. Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986). It is also not "necessary that the trial court make findings asserting the negative of each issue of fact raised." *Carr v. Yokohama Specie Bank, Ltd., of San Francisco*, 200 F.2d 251, 255 (9th Cir. 1953). The district court's findings should be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *Alpha Distrib. Co. of Cal. v. Jack Daniel Distillery*, 454 F.2d 442, 453 (9th Cir. 1972) (citing *Irish v. United States*, 225 F.2d 3, 8 (9th Cir. 1955).

The district court's findings of fact are reviewed under the clearly erroneous standard. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). This review for clear error is "significantly deferential," and the reviewing court "must accept the district court's factual findings absent a 'definite and firm conviction that a mistake has been committed.' " *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (quoting *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000). This Court may not reverse the district court even though we may be convinced we would have weighed the evidence differently had we been the trier of fact. *Phoenix Eng'g and Supply Inc. v. Universal Elec. Co., Inc.*, 104 F.3d 1137,

1141 (9th Cir. 1997) (citing *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 674 (1985)).

The Huffs argue that the district court erred in several findings of fact. First, the Huffs assert that the district court did not resolve conflicting testimony regarding: (1) whether Maria knew why the police were at her home before she went outside; (2) why Maria hung up her cell phone on Ryburn before proceeding outside to speak with the police; (3) whether Maria answered Ryburn's questions about whether there were any guns inside the Huff residence; (4) whether Maria told the officers she was going back into the house to get her husband; and (5) Maria's whereabouts upon returning inside the Huff residence. Second, the Huffs contend that the district court did not state that it was undisputed that Maria was free to return to her home. Third, the Huffs believe the district court erroneously failed to state why Ryburn went into the Huff residence.

The district court was not clearly erroneous in its findings such that reversal by this Court would be appropriate. That we may have weighed the testimony of the witnesses and other evidence in another manner, thus reaching different findings of fact, is not a proper basis for reversal. *Phoenix Eng'g and Supply Inc.*, 104 F.3d at 1141. The Federal Rules of Civil Procedure require "the reviewing court [to] give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). Accordingly, we've held that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000) (en banc) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985)). Here, the district court needed only to find the facts sufficient to indicate the basis for its ultimate legal conclusions. The district court was not required to find all possible facts, or to state explicitly why it had chosen to believe the testimony of the officers over Maria. Additionally, because the court found that exigent circumstances justified

the warrantless entry into the Huff residence, the court was not required to state Ryburn's reason for entering the home.

Accordingly, the district court's findings of fact are not clearly erroneous.

## B.   Fourth Amendment Violation

**[1]** The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. Physical entry into the home is "the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court*, 407 U.S. 297, 313 (1972); *see also Murdock v. Strout*, 54 F.3d 1437, 1440 (9th Cir. 1995) ("[T]he protection of individuals from unreasonable government intrusion into their houses remains at the very core of the Fourth Amendment."). Therefore, "[t]o safeguard the home, we normally require a warrant before the police may enter." *Frunz v. City of Tacoma*, 468 F.3d 1141, 1142-43 (9th Cir. 2006). Without a search warrant, the "search of a house is per se unreasonable, and absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment." *United States v. Shaibu*, 920 F.2d 1423, 1425 (9th Cir. 1990) (internal citation omitted). The existence of exigent circumstances is a mixed question of law and fact that we review de novo. *United States v. Reilly*, 224 F.3d 986, 991 (9th Cir. 2000).

In this case, the district court found that "a constitutional violation occurred" when "the officers made a warrantless entry into plaintiffs' home," and acknowledged that "[a]n exception to the warrant requirement is the existence of exigent circumstances." (ER 79:23-25, 80:24-25.) It is not clear whether the district court actually found that there were exigent circumstances present to justify entry into the home or if the district court merely found that the officers reasonably believed that exigent circumstances were present such that

they are entitled to qualified immunity despite their Fourth Amendment violation. The threshold issue before this Court, therefore, is whether there were exigent circumstances that justified the warrantless entry into the Huff home.

### 1.   Exigent Circumstances of Officer Safety

**[2]** Because the Officer Defendants had no warrant to search the Huff home, and were not given consent to enter the residence by either Maria or Vincent, their entry into the house is constitutionally impermissible unless exigent circumstances are present. *See id.* There are exigent circumstances to justify a warrantless entry by police officers into a home if the officers have a reasonable belief that their entry is "necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Fisher v. City of San Jose*, 558 F.3d 1069, 1075 (9th Cir. 2009). We have stated that "the exigent circumstance does not, however, relieve the police of the need to have probable cause." *United States v. Johnson*, 256 F.3d 895, 905 (9th Cir. 2001) (en banc). In *Johnson*, we stated that "when the government relies on the exigent circumstances exception, it . . . must satisfy two requirements: first, the government must prove that the officer had probable cause to search the house; and second, the government must prove that exigent circumstances justified the warrantless intrusion." *Id.*; *see also United States v. Ojeda*, 276 F.3d 486, 488 (9th Cir. 2002) (per curiam).

The Supreme Court has stated that "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984); *see also Minnesota v. Olson*, 495 U.S. 91, 100 (1990) ("[I]n the absence of hot pursuit there must be at least probable cause to believe that one or more of the other factors justifying the entry were present . . . ."). We have further explained that police officers can

meet their heavy burden only by showing "specific and articulable facts" that justify a finding of exigent circumstances. *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 957 (9th Cir. 2000) (quoting *United States v. Shephard*, 21 F.3d 933, 938 (9th Cir. 1994)). Mere speculation is not enough to establish exigent circumstances. *See United States v. Suarez*, 902 F.2d 1466, 1468 (9th Cir. 1990) (finding that speculation about the presence of drugs on the premises and the danger of their destruction is not sufficient to show exigent circumstances); *United States v. Driver*, 776 F.2d 807, 810 (9th Cir. 1985) ("[T]his burden is not satisfied by leading a court to speculate about what may or might have been the circumstances."). The Supreme Court has recognized only a few such conditions that constitute exigent circumstances. *See, e.g., Michigan v. Tyler*, 436 U.S. 499, 509 (1978) (ongoing fire); *United States v. Santana*, 427 U.S. 38, 42-43 (1976) (hot pursuit of a fleeing felon); *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967) (same); *Schmerber v. California*, 384 U.S. 757, 770-71 (1966) (destruction of evidence).

**[3]** In addition to exigency, officers must have probable cause. "Officers have probable cause for a search when 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.' " *United States v. Henderson*, 241 F.3d 638, 648 (9th Cir. 2000) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Probable cause is determined based on "the totality of the circumstances known to the officers at the time." *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002).

**[4]** Here, the police did not have, nor did the district court find, probable cause to believe that an offense had been or was being committed.[4] *See United States v. Lopez*, 482 F.3d

---

[4]The Officer Defendants argue that the constitutional requirements of probable cause and a warrant exist only where an intrusion results in a deprivation of liberty or property. The Officer Defendants take the posi-

1067, 1072 (9th Cir. 2007) (outlining the probable cause standard requiring that officers "have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested"). And "Supreme Court and Ninth Circuit cases unequivocally hold that probable cause is a precondition for any warrantless entry to seize a person in his home." *LaLonde*, 204 F.3d at 954. Indeed, the police testified that they did not think a crime had been or was being committed and that they had no reason to detain Maria or Vincent. The only arguable way we could find exigent circumstances would be to find that Maria's behavior "would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons." *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984).

**[5]** Additionally, there were no exigent circumstances. The Officer Defendants were not pursuing a fleeing felon. The Officer Defendants were not trying to prevent the destruction of contraband or evidence. No crime had been committed. No crime was in progress.

Here, the district court held:

---

tion that where there is merely an intrusion, "it should be sufficient that exigent circumstances exist." *Id.* The Supreme Court has not embraced the view that the existence of a constitutional violation should be determined by the events that happen after police officers make a warrantless entry into a home. *See Payton v. New York*, 445 U.S. 573, 589-90 (1980) ("But the critical point is that any differences in the intrusiveness of entries to search and entries to arrest are merely ones of degree rather than kind . . . [because] the Fourth Amendment has drawn a firm line at the entrance to the house."); *see also LaLonde*, 204 F.3d at 954-55 ("*Payton* specifically reversed the lower court opinion which had relied on the premise that a warrantless entry to seize a person within the home can be held to a lower standard than a warrantless entry to search and seizure property within a home.").

> [T]he officers testified that a number of factors led them to be concerned for their own safety and for the safety of other persons in the residence: the unusual behavior of the parents in not answering the door or the telephone; the fact that Mrs. Huff did not inquire about the reason for their visit or express concern that they were investigating her son; the fact that they hung up the telephone on the officer; the fact that she refused to tell them whether there were guns in the house; and finally that she ran back into the house while being questioned. That behavior, combined with the information obtained at the school — that Vincent was a student who was a victim of bullying, who had been absent from school for two days, and who had threatened to shoot up the school — led the officers to believe that there could be weapons inside the house, and that family members or the officers themselves were in danger.

(ER 81:4-15.)

**[6]** These facts relied upon by the district court in its legal conclusions amount to mere speculation. They do not satisfy the heavy burden required for a finding of exigent circumstances. That the Huffs did not answer their door or telephone may be "unusual," but it did not create exigent circumstances. *Hopkins v. Bonvicino*, 573 F.3d 752, 765 (9th Cir. 2009) ("[N]othing requires an individual to answer the door in response to a police officer's knocking."). The district court was incorrect in finding that Maria Huff's failure to inquire about the reason for the officers' visit, or her reluctance to speak with the officers and answer questions, were exigent circumstances. "[T]o the extent that the officers reasonably perceived [Maria] to be antagonistic, they were still not at liberty to enter [her home] under these circumstances." *LaLonde*, 204 F.3d at 957 n.16. Nothing in the district court's findings of fact states that Maria did not inquire about the reason for the officers' visit or express concern that they were investigat-

ing her son. Nothing in the district court's findings of fact indicates that Maria was not free to leave and return to her home, or that any of the officers had indicated that she was either required to answer their questions or restricted from returning to the inside of her house. Additionally, Maria did answer her cell phone when Ryburn called, spoke to him on the telephone, and went outside with her son Vincent upon learning they were present at her residence. She was under no obligation to invite the officers into her home. Indeed, our Constitution protects her decision to refuse the police entry into her home when they did not possess a warrant. *See Silverman v. United States*, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").

**[7]** Further, "the officers' assertion of a potential threat to their safety must be viewed in the context of the underlying offense." *LaLonde*, 204 F.3d at 957 n.16. Here, there was no underlying offense; the officers were investigating rumors of threats. We have stated that:

> [t]he mere fact that a person owns a rifle and does not like law enforcement officials does not in itself allow police officers to enter the person's home and seize him simply because he is unwilling to step into the public domain for questioning, even if probable cause exists to believe that some offense has been committed.

*Id*. In *LaLonde*, we found no exigent circumstances where probable cause existed; *a fortiori*, we should not find exigent circumstances where it is undisputed that no probable cause existed. It is also significant that Munoz and Roberts, two officers fully briefed on the background information preceding the officers' visit to the Huff home and present at the residence during the entire incident, entered the house because they believed they had been given consent, and not because

of any perceived exigency. Nor did Ryburn or Zepeda communicate any exigency to Munoz and Roberts. When the officers entered the Huff home, they committed a Fourth Amendment violation. The district court was incorrect in finding that exigent circumstances existed.

Finally, we note that although the officers do not specifically argue that their warrantless entry was justified by emergency circumstances, we would reject such a claim. The emergency doctrine applies when police officers reasonably believe entry is necessary to "protect or preserve life or avoid serious injury." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). This exception may appear to fit better the facts of this case because the officers need not have probable cause to show a crime has been or is about to be committed; instead, "[t]here must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." *Hopkins*, 573 F.3d at 764 n.5. Here, however, there was no "objectively reasonable basis for concluding that there [wa]s an immediate need to protect others or themselves from serious harm." *United States v. Snipe*, 515 F.3d 947, 951-52 (9th Cir. 2008). Maria merely asserted her right to end her conversation with the officers and returned to her home. Therefore, as discussed above, any belief that the officers or other family members were in serious, imminent harm would have been objectively unreasonable.

## 2.  Qualified Immunity

Qualified immunity can shield government officials from individual civil liability where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We use a two-step analysis to determine whether the facts show that: (1) the conduct of the officers violated a constitutional right; and (2) the right that was violated was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Hopkins*, 573

F. 3d at 762. Here, it has been established that the Officer Defendants committed a Fourth Amendment violation because there were no exigent circumstances justifying their entry into the Huff home.

### a.   Clearly Established Law

**[8]** Next we must determine whether the right which the Officer Defendants violated was clearly established at the time of the violation. This inquiry, whether the law was clearly established, is a pure question of law for the court to decide. *Romero v. Kitsap Cnty.*, 931 F.2d 624, 628 (9th Cir. 1991); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). If the officers violated such a right, but it was not clearly established, then they are entitled to immunity. *Hopkins*, 573 F.3d at 762. A right is clearly established if a reasonable officer would know that his conduct was unlawful in the situation he confronted. *Headwaters Forest Defense v. Cnty. of Humboldt*, 276 F.3d 1125, 1129 (9th Cir. 2002); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

**[9]** We have explicitly stated that "with respect to the lack of probable cause and the lack of exigent circumstances — the absence of either of which would preclude the officers' reliance on the exigency exception — the law as to both was clearly established in 2003." *Hopkins*, 573 F.3d at 772. The dissent relies on *Brigham City v. Stuart*, 547 U.S. 398 (2006), to argue that it was not clearly established law that a warrantless entry predicated on a perceived emergency but lacking probable cause violates the Fourth Amendment. In so doing, the dissent mistakenly conflates the emergency doctrine, which requires an objectively reasonable basis, with the exigent circumstances doctrine, which requires probable cause as well as a reasonable belief that entry is necessary. The Ninth Circuit has not merged these two doctrines; in fact, we have been explicit in recognizing their contours and their autonomous applications.[5] *See, e.g.*, *Hopkins*, 573 F.3d at 763

---

[5]The dissent implies that we should abandon our long-standing rule distinguishing between the emergency and exigency exceptions to the war-

(explaining that the emergency doctrine derives from the police officers' "community caretaking function" whereas the exigent circumstances doctrine derives from the police officers' "investigatory function"). In *Brigham City*, the Supreme Court confirmed the standard for whether police may enter a home without a warrant in accordance with the emergency doctrine: Officers must have "an objectively reasonable basis" to conclude that an emergency is occurring and immediate action is necessary to protect themselves or others from serious, imminent harm. *Brigham City*, 547 U.S. at 400; *see also Michigan v. Fisher*, 130 S. Ct. 546, 548 (2009) (per curiam) (characterizing *Brigham City* as an "emergency aid exception" case). As discussed above, this exception does not apply to the present case. *Brigham City* does not, as the dissent suggests, disturb the requirement that probable cause is necessary when a warrantless entry is based on exigent circumstances. This was clearly established law when the officers entered the Huff residence, and it is the law that continues to protect the privacy and sanctity of the home today. *See United States v.*

---

rant requirement in favor of approaches adopted by the Sixth and Tenth Circuits, which the dissent reads as dispensing with probable cause in favor of the objectively reasonable basis standard. *See United States v. Huffman*, 461 F.3d 777 (6th Cir. 2006); *Armijo v. Peterson*, 601 F.3d 1065 (10th Cir. 2010). In both of these cases, the courts expanded the scope of *Brigham City* over vigorous dissents. Neither case contains jurisprudential explanations or prudential concerns sufficient to justify why it is now necessary for us to merge these two distinct doctrines and dispense with the firmly-established rule announced by the Supreme Court and followed by every other circuit that the Fourth Amendment requires both probable cause and exigent circumstances, including safety, for a warrantless entry into the home. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam); *Estate of Bennett v. Wainwright*, 548 F.3d 155, 169 (1st Cir. 2008); *Loria v. Gorman*, 306 F.3d 1271, 1283 (2d Cir. 2002); *Estate of Smith v. Marasco*, 318 F.3d 497, 518 (3d Cir. 2003); *United States v. Moses*, 540 F.3d 263, 269-70 (4th Cir. 2008); *United States v. Newman*, 472 F.3d 233, 236 (5th Cir. 2006); *United States v. Venters*, 539 F.3d 801, 806-07 (7th Cir. 2008); *United States v. Clarke*, 564 F.3d 949, 959 (8th Cir. 2009); *Bates v. Harvey*, 518 F.3d 1233, 1245 (11th Cir. 2008); *In re Sealed Case 96-3167*, 153 F.3d 759, 764 (D.C. Cir. 1998).

*Struckman*, 603 F.3d 731, 739 (9th Cir. 2010). Accordingly, when we consider the actions of the officers "in the light of pre-existing law[,] the unlawfulness [is] apparent." *Anderson*, 483 U.S. at 640. The issue then becomes whether a reasonable officer would have known the conduct of Ryburn, Zepeda, Roberts, and Munoz in this situation was unlawful.

### b.   Objective Reasonableness

The reasonableness inquiry is objective, evaluating "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

### i.   Roberts and Munoz

**[10]** The district court found that Roberts and Munoz entered the Huff residence because they believed they had been given consent. Though Roberts and Munoz were mistaken in their beliefs, their actions were reasonable under the circumstances. They were not party to the conversations occurring between Ryburn, Zepeda, Maria, and Vincent. They entered the Huff home only after their colleagues Ryburn and Zepeda. No one communicated to them the basis for entry or indicated to them that they should remain outside. Under those conditions, a reasonable officer may have believed, though mistakenly, that he and his fellow officials had been given consent to enter the home. Roberts and Munoz are entitled to qualified immunity for their warrantless entry into the Huff residence in violation of the Fourth Amendment.

The Huffs argue that even if there were exigent circumstances to justify entry into their home, the officers violated their Fourth Amendment rights by remaining in their home once they realized that no exigent circumstances existed. But "officers [are] not required to periodically reassess whether the exigency persisted throughout" the duration of a search.

*Fisher*, 558 F.3d at 1077. Here, Roberts and Munoz's remaining in the home for five to ten minutes "was merely a continuation of the initial entry," and we therefore decline to hold them personally liable for failing to leave. *Id.* (quoting *United States v. Echegoyen*, 799 F.2d 1271, 1280 (9th Cir. 1986)).

### ii.   Ryburn and Zepeda

**[11]** The district court found that Zepeda entered the Huff home because of "officer safety concerns" and that Ryburn faced "a number of factors" that led to safety concerns. (ER 79:3-5, 81:4-5.) Both Zepeda and Ryburn knew that they were at the Huff house to investigate alleged threats that had been made by Vincent. They were aware that no crime had been committed at the Huff home. Both Zepeda and Ryburn knew that no crime was in progress at the Huff home. Both Zepeda and Ryburn were aware that they did not have probable cause to stop or detain Maria or Vincent. Both Zepeda and Ryburn knew that they had not been given consent to enter the Huff residence. Neither Zepeda nor Ryburn knew a gun to be present at the Huff home, ever saw a gun, or was ever informed of the presence of a gun. A reasonable officer confronted with this situation may have been frustrated by having a parent refuse them entry, but would not have mistaken such a refusal or reluctance to answer questions as exigent circumstances. Thus, Ryburn and Zepeda are not entitled to qualified immunity for their warrantless entry into the Huff residence in violation of the Fourth Amendment.

### III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part the district court's judgment and **REMAND** the case.[6]

---

[6]Each party shall bear its own costs on appeal.

Rawlinson, Circuit Judge, concurring in part, and dissenting in part:

I would pose the issue in this case as whether it was clearly established law that a warrantless entry predicated on a perceived emergency violates the Fourth Amendment despite the lack of probable cause. In my view, that point of law was not clearly established, and should result in our affirming the grant of qualified immunity to all the officers who are defendants in this case.

Unquestionably, the discrete incident that precipitated the entry in this case was Mrs. Huff's response to the question regarding whether there were guns in the house. The majority recites a sanitized account of this event, stating that Mrs. Huff "went into the house" and "testified that she responded that she would go get her husband." Majority Opinion, pp. 621-22. However, the district court's findings of fact, which the majority concedes must be credited, *see* Majority Opinion, p. 624, differs markedly from the majority's rendition. Indeed, the district court found that when asked whether there were guns in the house, rather than responding, Mrs. Huff turned and *ran* into the house. Mrs. Huff's precipitous departure understandably prompted safety concerns. Sergeant Rayburn testified as follows regarding his actions after Mrs. Huff declined the suggestion to go inside the home:

> Q. So when she said "no," did you decided [sic] to start questioning her as if you were inside the house?
>
> A. Yes. And that's why I asked if there was any weapons in the house.
>
> Q. In targeted violence situations, does that question have a particular meaning to you?
>
> A. Absolutely because of, again, the threat that he was going to blow up or shoot up the school. I

wanted to make sure neither one of them could access any weapons from inside the house, and that's where they normally get the weapons from is from either their parents or relatives or friends.

Q.  Did Mrs. Huff say "no" to your question about whether there were guns in the house?

A.  She didn't say anything at all. She just turned around and went into the house.

Q.  Did she say she was going to get her husband?

A.  No.

Q.  When Mrs. Huff turned and went into the house, were you concerned?

A.  Absolutely.

Q.  Were you scared?

A.  I was scared because I didn't know what was in that house and, again, I've seen too many officers killed in shootings. I did not want one of us to be injured. So I went in and followed her in the house.

Q.  Did you go into the house to search for guns?

A.  No.

Q.  Why did you go into the house?

A.  Because I didn't want her to access a weapon or Vincent Huff accessing a weapon.

Q.   Why didn't you just grab her? Stop her?

A.   It all happened so quick. As soon as I asked her about the weapons, she turned and ran into the house. I didn't have a chance to. Caught me by surprise.

In my view, the cases cited by the majority that address circumstances where law enforcement has targeted a person or an item for search or seizure are not the appropriate guideposts for our analysis. I would look instead to those cases that specifically address the scenario where officer safety concerns prompted the entry.

In *Brigham City v. Stuart*, 547 U.S. 398 (2006), the United States Supreme Court was called upon to "consider whether police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury." *Id*. at 400. The Supreme Court "conclude[d] that they may." *Id*.

In its analysis, the Supreme Court focused on "the appropriate Fourth Amendment standard governing warrantless entry by law enforcement in an emergency situation." *Id*. at 402 (citations omitted). Without mentioning a probable cause requirement, the Supreme Court upheld the warrantless entry because "the officers had an objectively reasonable basis for believing "that an emergency situation existed." *Id*. at 406.

The Supreme Court's analysis in *Brigham City* is consistent with its earlier pronouncement in *Georgia v. Randolph*, 547 U.S. 103 (2006). *Randolph* involved the warrantless search of a shared dwelling over the express refusal of a co-resident of the dwelling. *See id*. at 106. Although the Supreme Court determined that there was no valid consent by Randolph, and the results of the search were "unreasonable and invalid as to him," *id*., in responding to the dissent's argument that the rul-

ing would "shield[ ] spousal abusers and other violent co-tenants," *id.* at 117 (citation omitted), the majority observed that:

> [I]t would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur . . . Thus, the question whether the police might lawfully enter over objection in order to provide any protection that might be reasonable is easily answered yes . . .

*Id.* at 118 (citation omitted).

At least one other circuit had applied the analysis articulated in *Brigham City* to uphold a warrantless search as of 2007, when this challenged entry occurred. In *United States v. Huffman*, 461 F.3d 777, 780 (6th Cir. 2006), there was a report of shots fired. Police were dispatched to the scene, and observed bullet holes and glass. *See id.* The officers did not observe any blood or signs of injury. *See id.* After there was no response to the officers' knock and announcement of their presence, the officers entered the residence. *See id.* Huffman was asleep in a chair with a fully loaded assault rifle on a table in front of him. *See id.* Huffman was arrested and charged with firearm violations. *See id.* Huffman's motion to suppress on the basis of a Fourth Amendment violation was denied. *See id.* at 781. The district court concluded that the facts "were sufficient to establish exigent circumstances justifying entry into the residence without a warrant." *Id.*

In discussing the exigent circumstances exception to the warrant requirement, the Sixth Circuit cited *Brigham* for the proposition that there are "four situations that may give rise to exigent circumstances: 1) pursuit of a fleeing felon, 2) imminent destruction of evidence, 3) the need to prevent a

suspect's escape, and 4) a *risk of danger to the police* or oth-ers." *Id.* at 782 (citation omitted) (emphasis added). The Sixth Circuit explained that "to satisfy the exigent circumstances exception [the government] must show that there was a risk of serious injury posed *to the officers* or others that required swift action. *Id.* (citation omitted). The Sixth Circuit, as was the case in *Brigham City*, did not mention probable cause.

Although the more dated cases cited by the majority import a probable cause requirement into the exigent circumstances analysis, *Brigham City*, *Huffman* and other more recent cases discussing exigent circumstances do not. *See Michigan v. Fisher*, 130 S. Ct. 546 (2009) (describing the *Brigham City* holding as embodying the "emergency aid exception," requir-ing "only an objectively reasonable basis for believing that a person within the house is in need of immediate aid[.]" *Id.* at 548 (citations, alteration and internal quotation marks omit-ted); *see also United States v. Snipe*, 515 F.3d 947 (9th Cir. 2008) ("Considering the totality of the circumstances, law enforcement must have an objectively reasonable basis for concluding that there is an immediate need to protect others *or themselves* from serious harm." *Id.* at 951-52 (emphasis added); *Armijo v. Peterson*, 601 F.3d 1065, 1071 (10th Cir. 2010) ("[T]he exigent circumstances exception permits war-rantless home entries when officers reasonably believe that some actor or object in a house may *immediately* cause harm to persons or property not in or near the house." (Emphasis in the original).

In any event, as of 2007 when the events in this case occurred, at a minimum it was unclear whether a warrantless entry into a home by police officers who feared for their safety violated the Fourth Amendment. Under the rationale articulated in *Brigham City*, *Randolph* and *Huffman*, a police officer could have reasonably believed that he was justified in making a warrantless entry to ensure that no one inside the house had a gun after Mrs. Huff ran into the house without answering the question of whether anyone had a weapon. *See,*

*e.g., United States v. Paopao*, 469 F.3d 760, 766 (9th Cir. 2006), *as amended* ("Depending on the circumstances, the exigencies of a situation may make it reasonable for officers to enter a home without a warrant in order to conduct a protective sweep.") (quoting *United States v. Cavely*, 318 F.3d 987, 995-96 (10th Cir. 2003).) Accordingly, I conclude that it was not clearly established that the actions taken by Sergeant Ryburn and Officer Zepeda violated the Fourth Amendment. As a result, I would affirm the district court's decision granting qualified immunity to all four officers involved in the incident.

I, therefore, concur in that portion of the opinion holding that Officers Roberts and Munoz were entitled to qualified immunity. I respectfully dissent from that portion of the opinion holding that Sergeant Ryburn and Officer Zepeda were not entitled to qualified immunity.