FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-30080 |
| Plaintiff - Appellee, | D.C. No. 1:08-cr-30006 PA |
| v. | |
| HENRY VILLA, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, District Judge, Presiding

Argued and Submitted May 5, 2011
Portland, Oregon

Submission Vacated and Deferred July 18, 2011
Resubmitted October 23, 2012

Before:     TASHIMA, BEA, and IKUTA, Circuit Judges.

Henry Villa attacks his conviction on three principal grounds, and also

mounts an attack on his sentence.  We conclude that each of his contentions lacks

merit and, therefore, affirm his conviction and sentence.

---

     [*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**1.**     Villa contends that the district court erred in quashing his subpoena to the City of Merced, California, pursuant to Fed. R. Crim. P. 17(c), in which he sought the production of documents relating to a number of individuals involved in his case. We have previously noted that "Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'" United States v. Reed, 726 F.2d 570, 577 (9th Cir. 1984) (quoting United States v. MacKey, 647 F.2d 898, 901 (9th Cir. 1981)). Under Rule 17(c), the party seeking documents must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." United States v. Nixon, 418 U.S. 683, 700 (1974).

In this case, both the district court and the magistrate judge found that the subpoena, as drafted, was insufficiently specific, leaving open the possibility, which the defendant did not pursue, that a narrowed subpoena might be acceptable. The district court did not abuse its discretion by so ruling.

**2.**     Villa next argues that the government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose prior to trial that his former domestic partner had provided a statement to the government inculpating the defendant that conflicted with her prior testimony before the Grand Jury.

"There are three components of a Brady claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is

impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." Maxwell v. Roe, 628 F.3d 486, 509 (9th Cir. 2010). Here, assuming arguendo that the evidence was favorable to the defendant and that it was suppressed by the government, the defendant has not demonstrated that he was prejudiced by the late disclosure. "To escape the Brady sanction, disclosure 'must be made at a time when disclosure would be of value to the accused.'" United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988); accord United States v. Miller, 529 F.2d 1125, 1128 (9th Cir. 1976) (noting that the issue "is whether the lateness of the disclosure so prejudiced [the defendant's] preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial"). Here, where the defendant received the information at the start of the witness' testimony, the district court allowed the defendant to delay his cross-examination of the witness until the following day, and the defendant did not request any additional time, the defendant has not demonstrated that any prejudice ensued from the late disclosure.

**3.** Finally, with respect to his conviction, Villa contends that the district court erred in denying his motion to suppress because the evidence gathered from the government's placement and use of a GPS device on his vehicle was an unreasonable search in violation of the Fourth Amendment. See United States v.

-3-

Jones, 132 S. Ct. 945 (2012). Even assuming, however, that the GPS search violated the Fourth Amendment (an issue not considered in Jones), we nonetheless conclude that suppression of its fruits is not required because, here, the government agents acted in objectively reasonable reliance on then-binding circuit precedent, which held that neither the placement of an electronic tracking device on the undercarriage of a vehicle nor its use to monitor the vehicle's movement along public roads violated the Fourth Amendment. See United States v. Pineda-Moreno, 688 F.3d 1087, 1091 (9th Cir. 2012). As the Court noted in Davis v. United States, 131 S. Ct. 2419 (2011), "[s]earches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." Id. at 2423-24.

We also reject Villa's contention that the GPS tracking evidence should have been excluded because the attachment of the GPS to the vehicle violated the Oregon Constitution. The exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations," id. at 2426, and not violations of state law.

The district court did not err in denying Villa's motion to suppress the evidence gathered from the GPS device.

**4.** Villa also contends that his sentence should be vacated on three bases. We reject each of these contentions.

**A.**     Villa argues that the district court erred in imposing an upward adjustment to his Guidelines level based on his leadership role in the offense.  As a threshold matter, Villa contends that the government violated Rule 32(f) by not making its objections to the Presentence Investigation Report ("PSR") "[w]ithin 14 days after receiving" it.  Fed. R. Crim. P. 32(f)(1).  While the government's filing was not within 14 days of the original PSR, it was within 14 days of the Addendum to the PSR.  Objections made within 14 days of receipt of an addendum are timely under Rule 32.  See United States v. Showalter, 569 F.3d 1150, 1159 (9th Cir. 2009).  There was no Rule 32 violation.

On the merits, Villa challenges the four-level enhancement that the district court applied pursuant to U.S.S.G. § 3B1.1(a), for being an organizer or leader of the criminal activity involved.

> For a four-point upward adjustment to be appropriate, a preponderance of the evidence must support a finding that the defendant was an organizer or leader, not merely that the defendant was more culpable than others who participated in the crime.  We have upheld upward adjustments under § 3B1.1(a) in cases involv[ing] defendants who, the evidence showed, exercised some degree of control or organizational authority over others.

United States v. Rivera, 527 F.3d 891, 908 (9th Cir. 2008) (alteration in the original) (citations and internal quotation marks omitted).  To qualify for the enhancement, the defendant need have been a "leader" only of one other

-5-

participant. U.S.S.G. § 3B1.1 cmt. 2; <u>United States v. Garcia</u>, 497 F.3d 964, 970 (9th Cir. 2007) ("An enhancement under §§ 3B1.1(a) or (b) does not require control over all of the five or more participants.").

Bun's testimony demonstrates that Villa exercised "some degree of control or organizational authority over him." In addition, Villa would take half of the harvest. <u>See</u> U.S.S.G. § 3B1.1 cmt. 4 (noting that one factor in applying the enhancement is the "claimed right to a larger share of the fruits of the crime"). Villa also regularly brought supplies to the workers, enabling them to remain in the grow area and keep working. Further, Villa owned the land on which the marijuana was being grown and owning the assets of the organization can be a relevant factor in applying the enhancement. <u>See</u> <u>United States v. Barajas-Montiel</u>, 185 F.3d 947, 957 (9th Cir. 1999). Finally, although the defendant suggests that Martin <u>also</u> managed Bun, the guidelines expressly contemplate that "[t]here can, of course, be more than one person who qualifies as a leader or organizer . . . ." U.S.S.G. § 3B1.1 cmt. 4. Accordingly, we conclude that a preponderance of the evidence supports the finding that Villa was an organizer or leader of the enterprise.

**B.** Villa contends that the district court's finding that he "made several attempts to indicate that Miss Hammit would be killed if she testified against him"

was clearly erroneous. A finding "is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Hinkson, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc) (internal quotation marks omitted). Further, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Huff v. City of Burbank, 632 F.3d 539, 544 (9th Cir. 2011) (citation omitted).

Hammit testified that while Villa did not ask her to lie, he implied it, and that if she ever told the truth, he "couldn't protect [her] from the people that were known internationally." She also noted that "at one time when [Villa] was very angry he was talking about slitting" his nephews' throats. This testimony directly supports the district court's "specific[] [finding] that Mr. Villa 'made several attempts to indicate that Ms. Hammit would be killed if she testified against him.'" Based on the record, we conclude that this finding is not clearly erroneous.

**C.** Villa contends that the district court abused its discretion and imposed a substantively unreasonable sentence. Villa was sentenced to a 264-month term of imprisonment. While this is well above the mandatory minimum of 120 months, it is in midrange of the guidelines range of 235-293, based upon an offense level of 38 and a criminal history category of I. The district court

explained its sentence by noting the seriousness of the offense; that many defendants face a 10-year mandatory minimum sentence for merely driving or helping someone else, while Villa owned and controlled the land on which the conspiracy's activities were conducted. The court also noted the need to send a powerful message that large growing operations are serious criminal enterprises. Finally, it noted that "based on the nature and circumstances of the offense, the guidelines are correct . . . ." On this record, there can be little doubt that the district court adequately justified the within guidelines, midrange sentence imposed. See United States v. Carty, 520 F.3d 984, 991-92 (9th Cir. 1998) (en banc) (noting that it is "uncontroversial that a major departure should be supported by a more significant justification than a minor one," and that the district court "must make an individualized determination based on the facts") (internal quotation marks omitted).

• • • ● • • •

For the foregoing reasons the judgment of conviction and the sentence are **AFFIRMED.**