**Ricky MONTEILH, Plaintiff,**

v.

**COUNTY OF LOS ANGELES, Evelyn Gonzalez, Edyth Redmond, Maricruz Trevino, City of West Covina, Michelle Figueroa, and Jeff Mosley, Defendants.**

**Case No. CV 10–08183–SVW–JEM.**

United States District Court, C.D. California.

July 12, 2011.

---

Robert R. Powell, Law Offices of Robert R. Powell, San Jose, CA, for Plaintiff.

Roger Colvin, Alvarez–Glasman & Colvin, for City of West Covina.

Catherine Mason Mathers, Christie B. Swiss, Tomas A. Guterres, Collins Collins Muir & Stewart, LLP, South Pasadena CA, for County of Los Angeles, Edyth

Redmond, Evelyn Gonzalez, Maricruz Trevino.

**ORDER GRANTING SUMMARY JUDGMENT TO CITY DEFENDANTS ON FOURTEENTH AMENDMENT DEPRIVATION OF RIGHTS OF FAMILIAL ASSOCIATION CLAIM AND DENYING SUMMARY JUDGMENT ON FOURTH AMENDMENT WARRANTLESS ENTRY CLAIM [27]**

STEPHEN V. WILSON, District Judge.

## I. Introduction

On October 29, 2010, Ricky Monteilh ("Plaintiff") filed this suit against the County of Los Angeles, Evelyn Gonzalez, Edyth Redmond, Maricruz Trevino, the City of West Covina, and Does (collectively, "Defendants"). Plaintiff's claims arise from the Defendants' alleged removal of his child, J.M., from Plaintiff's home. On April 6, 2011, the First Amended Complaint ("FAC") was filed, substituting Officers Michelle Figueroa and Jeff Mosley as Defendants for unnamed Does. The FAC alleges a deprivation of the rights of familial association under 42 U.S.C. § 1983 in violation of the Fourteenth Amendment, as well as warrantless entry into Plaintiff's home in violation of the Fourth Amendment.[1] Only defendants Figueroa, Mosley, and the City of West Covina (collectively, "the City Defendants") have moved for summary judgment.[2]

### A. Facts

The facts are undisputed except where noted. Plaintiff is the legal father, but not the biological father, of minor J.M., a male

---

1. Additionally, *Monell* liability claims are asserted. The Court has previously bifurcated these *Monell* claims and does not address them in this Order.

2. At the hearing on June 27, 2011 ("the Hearing"), Plaintiff's counsel stated that the Coun-

ty of Los Angeles, Gonzalez, Redmond, and Trevino have settled their claims. However, these Defendants remain named on the Court's docket as no notice of settlement has been filed with the Court.

born in July 2001. (Plaintiff's Statement of Genuine Disputes, hereinafter "PSGD," ¶ 1). Plaintiff had 90 percent custody of J.M. during the events in question.

On June 21, 2009, Plaintiff was driving a vehicle with J.M. sitting in the back seat behind the passenger seat. (PSGD ¶ 11). J.M. began kicking the back of the driver's seat while the vehicle was in motion. (PSGD ¶ 12). Plaintiff requested J.M. to stop kicking the seat, but J.M. did not. (PSGD ¶ 13). In an effort to stop J.M., Plaintiff attempted to grab J.M.'s pant leg, but instead Plaintiff unintentionally grabbed J.M.'s bare leg. (PSGD ¶ 14). As a result, J.M.'s leg was bruised.

J.M. showed his bruise to his grandfather and the school principal. (PSGD ¶ 16). On June 24, 2009, the principal reported the bruise. (PSGD ¶ 17). On June 25, 2009, two City police officers went to Plaintiff's house and interviewed Plaintiff and J.M. (PSGD ¶ 18). The officers determined that no crime had occurred. (PSGD ¶ 18).

On July 2, 2009, Plaintiff, on his own accord, decided to meet with a County social worker, Keefer. Keefer told Plaintiff to schedule a doctor's appointment for J.M. so his bruise could be examined. (PSGD ¶ 20). On July 9, 2009, Plaintiff took J.M. to a doctor. The doctor was informed of the bruise and that J.M. had been experiencing nosebleeds.[3] (PSGD ¶ 21).

Sometime in July 2009, J.M.'s case was assigned to a different County social worker, Defendant Gonzalez. (PSGD ¶ 22). On July 29, 2009, Defendant Gonzalez consulted with a County supervisor, Defendant Redmond, and decided to remove J.M. from Plaintiff's home. (PSGD ¶ 23).

Defendant Gonzalez was given authority to detain J.M. by Defendant Redmond and another supervisor, Defendant Trevino. (PSGD ¶ 24). Defendant Gonzalez contacted the West Covina Police Department to seek assistance in removing J.M. (PSGD ¶ 25).

On July 29, 2009, Defendant Officers Figueroa and Mosley received a radio dispatch call for "keeping the peace" at Plaintiff's residence. Defendants Figueroa and Mosley arrived at Plaintiff's residence and met with Defendant Gonzalez and another social worker, Norma Barron. (PSGD ¶ 28). At this point, a conversation about the removal of J.M. took place between Gonzalez, Barron, Mosley, and Figueroa. (Mosley Depo. 46:1–7; 68:3–10; Figueroa Depo. 52:10–15). Thereafter, Plaintiff was contacted and came to the front door of his residence. (PSGD ¶ 28). Defendant Gonzalez informed Plaintiff that she was from County Child Services and was there to detain J.M. (PSGD ¶ 29). Neither Figueroa nor Mosley spoke to Plaintiff regarding the reason for the detention. (PSGD ¶ 30). Defendant Gonzalez asked Plaintiff to bring J.M. out of the residence and Plaintiff complied. (PSGD ¶ 35).

Defendant Gonzalez also instructed Plaintiff to re-enter his house to gather clothing for J.M. (Decl. of Monteilh ¶ 11; Decl. of Figueroa ¶ 10; Decl. of Mosley ¶ 10). At this point, Defendants Figueroa and Mosley entered Plaintiff's residence without a warrant and followed Plaintiff to the bedroom. (PSGD ¶ 36). Plaintiff contends that he did not consent to any Defendant entering his home, though Officer Mosley testified Plaintiff did consent.[4] (Monteilh Decl. ¶¶ 12–13; Mosley Depo. 58:22–25; 59:1–2). Officer Mosley also testified that Plaintiff remained calm

---

**3.** The Doctor's report shows that J.M. had a blood condition that may cause J.M. to bruise easily. (Monteilh Decl. ¶ 10).

**4.** Though Officer Mosley testified that Plaintiff consented, Officer Figueroa testified that she went into the home for safety reasons. (Figueroa Depo. 66:7–22).

throughout the incident and did not yell.[5] (Mosley Depo. 68:22–25; 69:1–8). Neither Officer searched Plaintiff's home, but stood by while Plaintiff retrieved J.M.'s clothes. (PSGD ¶ 38). After Plaintiff retrieved the clothes, the Officers exited the residence. (PSGD ¶ 39). Only Defendant Gonzalez physically removed J.M. from the residence. (PSGD ¶ 33). The Officers did not speak to J.M. or physically remove him. (PSGD ¶¶ 33–34). Defendant Gonzalez transported J.M. to the West Covina Police Department and Officers Figueroa and Mosley resumed their patrol duties. (PSGD ¶¶ 40–41).

## II. Legal Standard

### A. Summary Judgment

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997).

■ The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy its Rule 56(c) burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–24, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer,* 198 F.3d 1130, 1134 (9th Cir.2000). Only genuine disputes "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party" over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. Qualified Immunity

■ Qualified immunity shields public officials sued in their individual capacity for monetary damages, unless their conduct violates "clearly established" law that a reasonable public officer would have known. *Saucier v. Katz,* 533 U.S. 194, 199, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Qualified immunity involves a two-part analysis, requiring the court to determine whether, taken in the light most favorable to Plaintiff, "the facts alleged show the officer's conduct violated a constitutional right," and "whether the right was clearly established." *Katz,* 533 U.S. at 201, 121 S.Ct. 2151. "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Katz,* 533 U.S. at 201, 121 S.Ct. 2151. However, it is within the Court's discretion to decide which of the two prongs should be addressed first. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

■ To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would un-

---

**5.** However, Officer Figueroa testified that although Plaintiff was not violent and not threatening, he did yell. (Figueroa Depo. 63:1–10; 70:16–22).

derstand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In determining whether a federal right is clearly established, the Court first looks to binding precedent from the Supreme Court or the Ninth Circuit. *Mattos v. Agarano*, 590 F.3d 1082, 1089 (9th Cir.2010). In the absence of binding precedent, the Court looks to "whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir.2004) (quoting *Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir.2003)) (internal quotations omitted). Unpublished district court decisions also "may inform our qualified immunity analysis," but a right is rarely clearly established "absent any published opinions on point or overwhelming obviousness of illegality." *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir.2002).

 There must be "some parallel or comparable fact pattern to alert an officer that a series of actions would violate an existing constitutional right." *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir.2008). To be established clearly, however, there is no need that "the very action in question [have] previously been held unlawful." *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). "[O]fficials can still be on notice that their conduct violates established law … in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). However, " 'if officers of reasonable competence could disagree on [the] issue, immunity should be recognized.' " *Id.* (alterations in original) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

## III. Discussion

Plaintiff asserts two constitutional violations against the City Defendants. First, Plaintiff contends that the Officers violated the Due Process Clause of the Fourteenth Amendment by either being integral participants in J.M.'s removal, or by failing to intercede in the removal. Second, Plaintiff contends that in addition to participating in J.M.'s removal, the Officers violated the Fourth Amendment by entering his home.[6]

The City Defendants contend that they did not violate the Fourteenth Amendment because they did not physically remove J.M. from Plaintiff's home, did not make the decision to remove J.M., and were not involved in the process of removing J.M. Further, the City Defendants argue that their duty to intercede does not extend to the County social workers, who are not fellow officers. As to the Fourth Amendment claim, the City Defendants argue that warrantless entry was justified because exigent circumstances existed.[7] The City Defendants also contend they are entitled to qualified immunity on all claims.

---

**6.** Under the circumstances of this case, the two violations are distinct and are addressed separately. In *Mabe v. San Bernardino County*, 237 F.3d 1101 (9th Cir.2001), where a mother alleged that a County social worker unlawfully entered her home and removed her child, the Ninth Circuit addressed only the Fourteenth Amendment violation for the child's removal, and did not separately address a Fourth Amendment violation for the entry. However, unlike in *Mabe*, the Officers here entered Plaintiff's home without a war-

rant not because they intended remove the child (in fact, the record shows that J.M. was already in custody outside the home at the time of the entry), but because they believed Plaintiff could retrieve a weapon.

**7.** One of the Officers, Officer Mosley, claims that Plaintiff consented to the entry. However, Plaintiff declares he never consented. Since there are factual disputes as to whether Plaintiff consented, the City Defendants have not raised the issue on Summary Judgment.

## A. Deprivation of Rights of Familial Association Without Court Order or Exigency

### (1) Integral Participation

The parties dispute whether Plaintiff's first claim is based in Procedural Due Process, or Substantive Due Process. This debate has little importance at present because the City Defendants' Motion does not assert that J.M.'s removal was constitutional.[8] Instead, the City Defendants argue that Officers Mosley and Figueroa did not participate in J.M.'s removal. Though not framed as such by the parties, the City Defendants' only argument in its broadest sense is that a reasonable jury could not find that the City Defendants *caused* the alleged harm.[9]

"A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir.2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978)) (internal quotations omitted). As such, a police officer who is merely a bystander to his colleagues' conduct cannot be found to have caused any injury. *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir.2009); *see also Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir.1996) (rejecting a jury instruction that allowed the jury to "lump all the defendants together, rather than require it to base each individual's liability on his own conduct"). Instead, a plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir.2002); *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir.2008).

Officers who are "integral participants" in a constitutional violation are potentially liable under § 1983, even if they did not directly engage in the unconstitutional conduct themselves. *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir.2004). Officers are not integral participants simply by the virtue of being present at the scene of an alleged unlawful act. *Jones*, 297 F.3d at 936. Instead, integral participation requires some *fundamental involvement* in the conduct that allegedly caused the violation. *See id.*

Officers are fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object.[10]

---

**8.** In any case, it is clear that the FAC alleges that Defendants violated Plaintiff's Procedural Due Process rights by failing to obtain a Court Order or warrant before removing J.M. This right has been recognized by the Ninth Circuit. *Mabe v. San Bernardino County*, 237 F.3d 1101, 1106 (9th Cir.2001); *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir.2000) ("Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is

reasonably necessary to avert that specific injury.").

**9.** Whether the requisite causation is present is normally a question of fact. *See Higazy v. Templeton*, 505 F.3d 161 (2d Cir.2007); *George v. City of Long Beach*, 973 F.2d 706, 709 (9th Cir.1992) ("Questions of proximate causation are issues of fact which are properly left to the jury if reasonable persons could reach different conclusions.").

**10.** Additionally, officers may be integral participants even if they have no knowledge of a plan to commit the alleged violation if their

*See Boyd,* 374 F.3d at 780 (discussed *infra*); *Melear v. Spears,* 862 F.2d 1177, 1181, 1186 (5th Cir.1989) (holding officer who went to the door with other officers and stood armed at the door while the other officers performed unconstitutional search, with knowledge of plan to enter and search apartments without warrant or probable cause, was not a bystander); *Creamer v. Porter,* 754 F.2d 1311, 1316–17 (5th Cir.1985) (holding that officer who had read warrant and was aware that search exceeded warrant's limited scope but failed to act while other officers exceeded scope of warrant was not a bystander); *Cf. Hopkins,* 573 F.3d at 770 (holding that officer was bystander in warrantless search because he was not informed of a "plan of action" to enter house and stood outside in yard interviewing witness while other officers performed the search); *Torres,* 548 F.3d at 1206 (holding that officer was bystander in false arrest because he was not present at time of arrest, did not instruct arresting officers to effectuate arrest, and did not consult with arresting officers before arrest). In *Boyd,* the alleged Fourth Amendment violation was one officer's use of a flash-bang grenade as part of a search operation involving a team of police officers. *Boyd,* 374 F.3d at 780. Although only one police officer threw the flash-bang, the Ninth Circuit held that other police officers present at the scene were also subject to potential liability for excessive force. *Id.* The Ninth Circuit reasoned that the officers stood armed behind the

officer as he threw the flash-bang, the flash-bang was part of the search operation in which every officer participated, and every officer *knew that the operation would involve the use of a flash-bang.*[11] *Id.*

Plaintiff relies exclusively on *Boyd* in arguing that the Officers were integral participants in the alleged constitutional violation, which is the taking of a child without a Court Order or imminent danger to the child. Indeed, as in *Boyd,* where the officers provided armed back-up for the single officer who deployed the flash-bang, here, the Officers admit that they stood outside Plaintiff's home, behind the social workers, armed, and in full uniform.[12] However, the Officers' presence at Plaintiff's door—even if assumed to rise to the level of physical participation of the officers in *Boyd* who provided armed back-up and participated in a search—is insufficient to establish integral participation if the Officers have no knowledge of or reason to know of an unlawful act. In *Boyd* and the authorities cited above, the officers knew or had reason to know of the unlawful act but participated nonetheless. In this case, however, the record does not indicate that the Officers knew or even that they had reason to know that J.M. was being removed *without a Court Order.* In fact, all of the evidence indicates the Officers were not actually aware of the absence of any Court Order. Gonzalez Depo. 126:4–8; Mosley Decl. ¶ 9; Figueroa

---

physical participation in the alleged violation was part of a closely related series of physical acts leading to the violation. *Blankenhorn v. City of Orange,* 485 F.3d 463, 481 n. 12 (9th Cir.2007) (holding that officers who tackled and handcuffed plaintiff were integral participants in use of hobbling restraints, which were applied by one officer after tackling and handcuffing had occurred). It is undisputed that the facts of the instant case do not resemble the scenario in *Blankenhorn.*

11. Although the Ninth Circuit did hold that every officer was subject to potential liability for excessive force, the Ninth Circuit went on to hold that qualified immunity was applicable because a reasonable officer was not on notice that the use of a flash-bang was excessive force. *Boyd,* 374 F.3d at 784.

12. The Court does not reach the issue of whether Defendant Gonzalez is liable in this Motion.

Decl. ¶ 9. The Officers were told by their dispatcher and Defendant Gonzalez solely that they were called to "maintain the peace." Gonzalez Depo. 126:4–8; Mosley Decl. ¶ 5. Plaintiff points to no evidence in the record that would allow a reasonable jury to conclude that the Officers were actually aware of the absence of a Court Order.

■ Additionally, Plaintiff points to no evidence that would allow a reasonable jury to conclude that the Officers should have known of the absence of a Court Order. It is undisputed that the Officers knew that (1) they were called only to maintain the peace; (2) the social workers would remove the child; and (3) the father had been violent in the past. Plaintiff never demanded to see a Court Order, nor did the social workers ever give the Officers a reason to believe that they were acting without a Court Order. Unlike cases where Officers have an independent duty to investigate the veracity of a citizen's complaint, here, the social workers, by virtue of their status as County officials, implicitly indicated they had authority to remove the child by stating they were present to remove the child from a violent father.[13] *Compare Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 924 (9th Cir.2001) ("In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses."); *with Gordon v. Degelmann,* 29 F.3d 295, 300 (7th Cir.1994) (noting that officers often rely on other officers' instruction knowing nothing beyond the instruction). Although a reasonable officer is expected to have knowledge of the law, the circumstances of this case would not have put a reasonable officer on notice that the alleged violation—a removal of J.M. *without a Court Order* or exigent circumstances—was in progress.

■ To circumvent the fact that the Officers were not reasonably on notice that an unlawful act was occurring, Plaintiff attempts to narrowly define the unlawful act as solely the act of physically removing J.M. Indeed, it is undisputed that the Officers knew that J.M. would be removed. Plaintiff analogizes to *Boyd,* where the officers were integral participants by virtue of having knowledge of the physical act of using the flash-bang. However, *Boyd* was an excessive force case—where, by having knowledge of the plan to use the flash-bang, the officers were on notice that a particular level of force would be used. By contrast, Plaintiff's Fourteenth Amend-

---

**13.** However, there are some parallels between integral participation in another government officer's unlawful act and cases where officers become participants in a private citizen's unlawful act. Even in private citizen cases, officers merely maintaining the peace and acting as bystanders are not subject to liability under § 1983. Officers are only subject to liability if they affirmatively aid a private citizen in such a way that the allegedly unlawful act would not have occurred but for the officers' assistance. *See Marcus v. McCollum,* 394 F.3d 813, 819 (10th Cir.2004) (compiling case law in cases where officers sent to maintain peace became involved in repossession of property and considering factors such as failing to depart before completion of repossession, standing in close proximity to the creditor, and unreasonably recognizing the documentation of one party over another); *Howerton v. Gabica,* 708 F.2d 380, 384 (9th Cir.1983) (holding officers were not "merely standing by" to keep the peace during eviction because it objectively appeared that officers sanctioned the eviction by being present at each step of the eviction and making an unsolicited visit to tenants in which an officer advised the tenants to leave); *Dunn v. City of Elgin,* 347 F.3d 641, 649 (7th Cir.2003) (holding officers crossed line from providing "peacekeeping standby service" to participating in removal of child by enforcing invalid court order).

ment claim is analogous to a Fourth Amendment warrantless seizure. *Wallis,* 202 F.3d at 1137 n. 8 (reasoning that the same legal standard applies in evaluation of Fourth and Fourteenth Amendment claims for the removal of children). In warrantless search and seizure cases, integral participation requires *knowledge or a reason to know that no warrant exists* in addition to some affirmative participation in the search or seizure.[14] *See Melear,* 862 F.2d at 1181, 1186; *Creamer v. Porter,* 754 F.2d at 1316–17. As such, to create a genuine issue of material fact as to integral participation, Plaintiff cannot simply contend that the Officers knew of the plan to remove J.M., but Plaintiff must point to a fact that would allow a reasonable jury to infer that the Officers had knowledge or a reason to know that J.M.'s removal was unlawful. As discussed above, Plaintiff points to no such fact.

The Officers had no knowledge of the situation before their arrival at the scene and had been instructed to maintain the peace by their dispatcher. Upon arrival, the Officers were informed by County social workers that a child would be removed and the social workers confirmed they were called to maintain the peace. The Officers did not participate in the decision to remove the child, physically remove the child, or have any conversations with either Plaintiff or the child. Though the Officers' presence at the scene may have provided some comfort to the social workers, without the requisite *knowledge* or *reason to know* that an unlawful act is taking place, the Officers' presence cannot transform them from peacekeepers to *integral participants* in the unlawful conduct. Here, the undisputed evidence shows that

no reasonable jury could find that the Officers actually knew, or had a reason to know, that the social workers did not possess a Court Order.

The Officers' Summary Judgment Motion on the basis of integral participation in the Fourteenth Amendment violation is GRANTED.

### (2) Failure to Intercede

Plaintiff alternatively argues that even if the Officers were not integral participants in J.M.'s removal, they had a duty to interfere with Defendant Gonzalez's unconstitutional removal of J.M.[15]

The parties agree that "[p]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates,* 229 F.3d 1271, 1289 (9th Cir.2000) (quoting *United States v. Koon,* 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994) *rev'd on other grounds* ) (internal quotations omitted). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* An officer's duty to intercede arises only when a fellow officer is acting under the color of state law, but not when the fellow officer is engaged in private violence. *Martinez v. Colon,* 54 F.3d 980 (1st Cir.1995), *cert. denied,* 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995). Furthermore, bystander officers only have a duty to stop a violation when they know or have reason to know of the constitutional violation. *Ramirez v. Butte–Silver Bow County,* 298 F.3d 1022, 1029–30 (9th Cir.2002) (holding that bystander officer could not be liable for failure to intercede in unlawful search by fellow officers because he had no reason to

---

**14.** If the law was as Plaintiff contends, assisting officers would face near strict liability for the acts of other officers.

**15.** In addressing this argument, the Court notes that the duty to intercede legal theory

overlaps significantly with the integral participation theory above. *See, e.g., Boyd,* 374 F.3d at 780 (considering officers' knowing failure to object as one factor in integral participation analysis).

know that the search warrant was defective); *Ting v. U.S.*, 927 F.2d 1504, 1511 (9th Cir.1991); *Aragonez v. County of San Bernardino*, No. EDCV 07–00992–VAP (Opx) 2008 WL 4948410 at *6 (C.D.Cal. 2008) ("Bystander officers only have a duty to stop a violation, though, where they know or have reason to know of the constitutional violation.").

The City Defendants contend there was no duty to intercede because *Cunningham* and its progeny involved a police officer's duty to intervene with other police officers, while in this case, Plaintiff contends that police officers had a duty to intervene with a County social worker. Although the Ninth Circuit has not spoken on this issue and the parties have cited no cases, in *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995), the Fifth Circuit held that a county police officer may be liable for failing to intervene with a city police officer when the city police officer used excessive force. *Id.* at 919. However, unlike in *Hale*, Plaintiff asserts that law enforcement officers had a duty to intervene when *non-law enforcement agents* (social workers), with specific expertise in regulations involving child abuse, violated Plaintiff's rights. *See Gordon*, 29 F.3d at 298 ("The Constitution does not require all public employees to intercede, outside their own bureaucratic hierarchies, on behalf of persons whose rights are in jeopardy."); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by *other law enforcement officers* in their presence.") (emphasis added).

Even assuming that the principle in *Hale* extends to this case, the vast majority of cases, including *Hale*, involve an offi-

cer's failure to intercede when fellow officers are employing unlawful force.[16] *See, e.g., Cunningham*, 229 F.3d at 1289–90; *Robins v. Meecham*, 60 F.3d 1436 (9th Cir.1995) (holding prison officials violated a prisoner's Eighth Amendment rights by failing to intervene when officer used excessive force); *Ting v. United States*, 927 F.2d 1504 (9th Cir.1991); 1B Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 3.09[1] (2010–2 Supplement) (compiling cases and noting that the duty to intercede issue has primarily arisen in excessive force cases).

■■■■ Finally, whether or not the duty to intercede is even applicable in this case for the reasons discussed above, the Court has already determined that the Officers did not know or have any reason to know that a constitutional violation was occurring in this case. Thus, on this basis alone, the Officers cannot be liable on a duty to intercede theory.

The Officers' Motion for Summary Judgment on the Duty to Intercede issue is GRANTED.

### B. Warrantless Entry

■■■■ Unreasonable government intrusion into the home is the chief evil against which the Fourth Amendment is directed. *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. Martinez*, 406 F.3d 1160, 1163 (9th Cir.2005) (internal quotation marks omitted) (quoting *Payton*, 445 U.S. at 586, 100 S.Ct. 1371). It is undisputed that the Officers entered Plaintiff's home without a warrant. However, the Officers contend that exigent circumstances existed such that no warrant was required.

---

**16.** Additionally, in *United States v. Koon*, 34 F.3d 1416 (9th Cir.1994), the Ninth Circuit reasoned that officers could be liable for a failure to intercede when a private third party inflicts physical harm on a person in official custody. *Id.* at 1447.

■ "[W]hen the government relies on the exigent circumstances exception, it still must satisfy two requirements: first, the government must prove that the officer had probable cause to search the house; and second, the government must prove that exigent circumstances justified the warrantless intrusion." *United States v. Johnson,* 256 F.3d 895, 905 (9th Cir.2001) (en banc).

■ "Officers have probable cause for a search when 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Henderson,* 241 F.3d 638, 648 (9th Cir.2000) (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Probable cause is determined based on "the totality of the circumstances known to the officers at the time." *United States v. Alaimalo,* 313 F.3d 1188, 1193 (9th Cir.2002).

■ "There are exigent circumstances to justify a warrantless entry by police officers into a home if the officers have a reasonable belief that their entry is necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Huff v. City of Burbank,* 632 F.3d 539, 544 (9th Cir.2011) (quoting *Fisher v. City of San Jose,* 558 F.3d 1069, 1075 (9th Cir.2009)) (internal quotations omitted). The government can meet its heavy burden of showing exigent circumstances only by presenting "specific and articulable facts." *Id.* at 545.

■ In addition to the exigent circumstances doctrine, which derives from an "investigatory function," the Ninth Circuit recognizes an "emergency exception" to the warrant requirement, which derives from police officers' "community caretaking function." *Huff,* 632 F.3d at 548–49. Under the emergency doctrine, officers may enter a home without a warrant if they have "an objectively reasonable basis to conclude that an emergency is occurring and immediate action is necessary to protect themselves or others from serious, imminent harm." *Id.* at 549 (citing *Brigham City v. Stuart,* 547 U.S. 398, 400 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)).

■ Whether reasonable cause to believe exigent circumstances existed in a given situation is a question of fact to be determined by a jury. *Wallis,* 202 F.3d at 1138 (citing *McKenzie v. Lamb,* 738 F.2d 1005, 1008 (9th Cir.1984)). "Summary judgment in favor of the defendants is improper unless, viewing the evidence in the light most favorable to the plaintiffs, it is clear that no reasonable jury could conclude that the plaintiffs' constitutional rights were violated." *Id.*

■ Although the City Defendants argue that the exigent circumstances doctrine is applicable, they make no attempt to show probable cause.[17] Even assuming

---

17. Indeed, there is no evidence in the record that would suggest that the Officers had independently determined there was probable cause to enter the home to remove J.M. In fact, J.M. appears to have been in custody outside the home at the time the Officers entered the home. Moreover, the City Defendants do not contend that *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) and its progeny (applying the "fellow officer" rule) are applicable. For these reasons, it appears that the emergency doctrine is more applicable to the facts of this case than the exigent circumstances doctrine. Additionally, the Officers claim their entry was justified to protect themselves, which falls best under the emergency exception— which allows entry when immediate action is necessary to protect oneself or others from serious, imminent harm. However, the City

there was probable cause, the Officers have failed to put forth undisputed "specific and articulable facts" supporting exigent circumstances. The Officers offer two facts to support exigent circumstances. First, the Officers contend that in their experience, removing a child is an emotional situation that could lead to resistance. Second, one of the Officers testified that the social workers had informed her that the father had been violent in the past. Based on these two circumstances, the Officers believed that entry into the home was necessary to prevent imminent physical harm to themselves and others in the vicinity because Plaintiff could have retrieved a weapon. However, the Officers' arguments are unavailing.

Although Officer Figueroa claims that she was told that Plaintiff had been "violent in the past," she was never told that his violence involved a weapon nor that the violence was directed at anyone else but J.M.[18] The Officers also knew that they were not present to arrest Plaintiff and were never given an indication that a crime was underway or had occurred. Moreover, it is undisputed that before returning inside the home, Plaintiff was *complying with a directive* to retrieve J.M.'s clothes and did not reenter his home on his own accord. Additionally, Officer Mosley

admitted that Plaintiff appeared calm during the entire encounter. Officer Mosley even thanked Plaintiff for his cooperation after the encounter. Though Officer Figueroa testified that Plaintiff yelled during the encounter (a disputed fact), both Officers admit that *they did not perceive Plaintiff's conduct as threatening.* Figueroa Depo. 62:25; 53:1–10; Mosley Depo. 68:22–25; 69:1–8. These facts do not display the dangerous behavior that has typically justified a warrantless entry. *See, e.g., United States v. Weems,* 322 F.3d 18 (1st Cir.2003) (exigent circumstances when defendant known to be armed with a dangerous weapon); *United States v. Fields,* 113 F.3d 313, 323 (2d Cir.1997) (exigent circumstances when defendants were observed bagging quantity of cocaine, one defendant had reputation for violence, and suspects were likely to flee); *see also* 3 LaFave, Search and Seizure, § 6.1(f) (4th ed. 2008) at 311 n. 200 (collecting cases). As such, no objectively reasonable officer would believe that entry into Plaintiff's home was justified based on the facts as viewed in a light most favorable to Plaintiff.

Moreover, the City Defendants do not contend that the law was unclear. It was clearly established that warrantless entry

Defendants do not contend that the emergency doctrine is applicable. Even had the City Defendants advanced the emergency doctrine, the Court would reject the argument for the same reasons discussed below—that no objectively reasonable officer would believe that there was imminent danger to justify entry into Plaintiff's home based on the facts viewed in a light most favorable to Plaintiff.

18. The Ninth Circuit has denied qualified immunity to officers who entered a home on the basis of exigent circumstances, even though the officers were informed by a neighbor that the uncooperative homeowner owned a rifle and would be willing to use it. *LaLonde v. County of Riverside,* 204 F.3d 947, 956, 958 (9th Cir.2000). In *LaLonde,* the Officers

claimed that the plaintiff was hostile and moved towards the kitchen; however, the Ninth Circuit found a factual dispute about whether the plaintiff ever moved toward the kitchen before the officers entered. *Id.* at 958. Here, it is undisputed that Plaintiff was complying with a directive to go inside. Moreover, the Officers had no reason to believe that Plaintiff owned a weapon, and in fact, testified that Plaintiff appeared non-threatening. *See also Huff,* 632 F.3d at 550 (denying qualified immunity to officers who claimed entry was necessary for officer safety concerns when they were denied entry into a home when the officers knew that no crime was in progress, had not been given consent, and never saw a gun or were ever informed of the presence of a gun).

required either exigent circumstances or an emergency such that immediate action was necessary to protect themselves or others from serious harm. *See Huff,* 632 F.3d at 549 (holding that the law had been clearly established since 2007); *Calabretta v. Floyd,* 189 F.3d 808, 814 (9th Cir.1999) (denying qualified immunity to police officer who entered home without warrant with social worker to search child for signs of abuse). Although the Officers had been told that the Plaintiff had been "violent in the past" and the Officers knew that Plaintiff's child was about to be removed, these facts on their own would not entitle a police officer to enter Plaintiff's home without a warrant. Moreover, it is *undisputed* that Plaintiff was calm, not threatening, and complying with a directive to return inside. Additionally, the Officers were never given an indication that a crime had occurred or that Plaintiff in fact kept a weapon in his home. Viewing the circumstances above in a light most favorable to Plaintiff, no reasonable officer would believe he could enter Plaintiff's home without a warrant.

The City Defendants' Motion for Summary Judgment and Qualified Immunity on Plaintiff's Fourth Amendment claim is DENIED. Further, factual disputes exist as to whether Plaintiff consented to the Officers' entry.

### C. Punitive Damages

The Officers also assert that no reasonable jury could find their conduct rises to the level of "evil motive or intent" or "reckless or callous indifference" to Plaintiff's rights. *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Although it seems that based on the record developed thus far that there may not be a basis for punitive damages even if a

Fourth Amendment violation is later proven, the Court reserves a ruling on the issue until evidence is presented at trial.[19]

### IV. Conclusion

Defendants' Motion for Summary Judgment and Qualified Immunity on Plaintiff's Fourteenth Amendment cause of action is GRANTED. Defendants' Motion for Summary Judgment and Qualified Immunity on Plaintiff's Fourth Amendment cause of action is DENIED. The Court reserves judgment on punitive damages until evidence is presented at trial.

IT IS SO ORDERED.

---

19. As stated at the Hearing, the Court bifurcates trial into two phases. No evidence of punitive damages will be presented in the first phase of trial. Evidence of punitive damages may be presented in the second phase of trial if the jury returns a verdict for Plaintiff.